### THE CITY OF GALVESTON V. HARRY DEVLIN.

#### No. 3044.

1. **Action for Extra Work on a Building Contract.**—The facts alleged disclose an express contract in September, 1888, on part of the defendant to pay plaintiff for the labor and material applied by him to the building which were not included in the original contract of May, 1888. A contract includes a promise, and the allegation of the one is the averment of the other. The petition alleging the contract for extras was sufficient.

2. **Power of Agent.** — A building committee was appointed by the city council with authority to contract for the construction of a hospital building at a cost not exceeding $50,000. The contract was let. In the construction disputes arose between the supervising architect and the contractor. A supplemental contract was made September, 1888, by which extra work was to be done and the matters of dispute to be decided after the completion of the work. The entire sum in control of the committee was exhausted before the suit was brought for the extra work. It was pleaded by the city in defense, that the committee had no authority to bind the city in excess of the fund placed at their disposal. *Held*, that as it appeared in the evidence that at the time the supplemental contract was made the amount under control of the committee was not exhausted, it had authority to make the contract, having sufficient funds. The subsequent disposal of the funds could not injure the contractor.

3. **Fact Case.**—Whether the work in controversy was extra work or was included in the original specifications, as was insisted upon by the architect, was an issue for the jury upon the testimony. There being a conflict in the testimony, the verdict will not be set aside.

4. **Building Contract.** — In the original contract for the building of the John Sealy Hospital it was stipulated that the decision of the supervising architect should be final upon all questions arising in the construction. Material differences as to the specifications having arisen, it was agreed that the work should go on without prejudice to the claims of the contractor. *Held*, that such supplemental contract altered the original contract to the extent that the opinion of the architect was subjected to investigation and correction if in error.

5. **Assignment of Error.**—An assignment of error that "the verdict of the jury under the law and the facts in the case is grossly excessive," is too general to require notice.

APPEAL from Galveston. Tried below before Hon. WM. H. STEWART. No statement is necessary.

*S. W. Jones,* for appellant.—1. No sufficient cause of action is stated in the plaintiff's petition, and the defendant's general demurrer thereto should have been sustained. The petition contains no averment of a promise, nor do the facts pleaded therein disclose a contract or promise, express or implied, on the part of the defendant to pay plaintiff for the alleged extra work and material. Moody v. Benge, 28 Texas, 545; Catlin v. Glover, 4 Texas, 152; Frazier v. Todd, 4 Texas, 461; Malone v. Craig, 22 Texas, 610; Bledsoe v. Wills, 22 Texas, 651; Candler v. Hart, 10 Wend., 487; Muldrow v. Tappan, 6 Mo., 278; McNulty v. Collins, 7 Mo., 69.

2. The facts constituting the plaintiff's right to recover and fixing the defendant's liability should be directly and distinctly averred, and it is not sufficient that they may be inferred from other facts alleged in the petition. The promise was in this case the very gist of the action —it was a material, traversable fact; and whether express or implied should have been averred. Moody v. Benge, 28 Texas, 545.

3. The $50,000 donated to the city of Galveston by the executors of John Sealy, deceased, for the erection within its limits of a hospital for the indigent sick of said city, became a trust fund; and when the city council accepted the trust and appointed a committee with power to carry out, in such manner as said committee might deem best, the object of the donor, and with authority to receive and disburse said fund, it did not thereby clothe the committee with power or authority to create or incur an indebtedness or obligation on the part of said city in excess of the fund thus donated. Any indebtedness or obligation, therefore, incurred by the committee with respect to said hospital building in excess of that fund was without authority from the defendant and is not binding upon it, unless such unauthorized act of the committee was subsequently ratified by the governing body of the defendant corporation. Wilson v. School Dist., 32 N. H., 118; Stewart v. City of Cambridge, 125 Mass., 102; Hague v. City of Philadelphia, 48 Pa. St., 527; Keyes v. Inhabitants of Westford, 17 Pick. (Mass.), 273; 1 Dill. Mun. Corp., 463, 464, and note 1.

*Finlay & Finlay*, for appellee.—1. The facts pleaded in plaintiff's petition disclose an express contract on the part of defendant to pay plaintiff for all labor and material by him put on the building which were not called for by the original contract, and therefore state a good cause of action. Sayles' Civ. Stats., art. 1187; Rule 2, District Court Rules; Davenport v. Jennings, 25 Neb., 87; Catlin v. Glover, 4 Texas, 151; Hollis v. Chapman, 36 Texas, 2; Holman v. Criswell, 15 Texas, 397; 1 Chitty's Plead., pp. 347, 348.

2. Where under a contract for the erection of a building according to certain plans prepared by an architect, the work to be under his supervision, changes and alterations are made by the direction of the architect which necessitate extra labor and material, the owner will be liable for the extra costs. 2 Pars. on Con., 57; Erskine v. Johnson (Neb.), 36 N. W. Rep., 510; Badders v. Davis, 88 Ala., 367; Bartlett v. Stanchfield, 148 Mass., 394; McClay v. Gluck, 41 Minn., 193.

3. Whether or not the various items of labor and material sued for and set out in the petition were extra, and not called for in the contract, plans, and specifications, was a question of fact for the jury. The jury having found for the plaintiff on these issues, the verdict ought not to be disturbed. Briscoe v. Bronaugh, 1 Texas, 326; Edrington v. Kiger, 4 Texas, 89; Davidson v. Edgar, 5 Texas, 496; Sims &

Smith v. Chance, 7 Texas, 569; Wells v. Barnett, 7 Texas, 587; Cheatham v. Riddle, 8 Texas, 168; Stewart v. Hamilton, 19 Texas, 101; Powell v. Haley, 28 Texas, 56; Jordan v. Imthurn, 51 Texas, 276; Flanagan v. Pearson, 61 Texas, 307; Railway v. Lee, 69 Texas, 560.

TARLTON, JUDGE, *Section B.*—Harry Devlin filed this suit against the city of Galveston, in the District Court of Galveston County, on November 12, 1889, to recover $2098.46 for extra labor and material furnished in the construction of a hospital building erected and constructed by him for the city. He recovered judgment for the sum of $1500, from which this appeal is prosecuted.

His petition is assailed as insufficient on general demurrer, and we hence deem it proper to insert an elaborate statement of its allegations, taken from his brief, as follows:

"1. That the city of Galveston is authorized and empowered by its charter to erect and establish one or more hospitals, and was so authorized at the time hereinafter mentioned.

"2. That heretofore, to-wit, on the 8th day of May, 1888, the said city of Galveston, through its duly authorized agents, entered into a contract with plaintiff for the erection and completion of what is known as the John Sealy Hospital, constituting four brick buildings, connected with basement, on grounds situated on the south half of block No. 668, in the city of Galveston, in accordance with certain plans, drawings, and specifications then and there exhibited; which are now in the possession of said city or its agent and architect, N. J. Clayton, Esq., in consideration of which the said city of Galveston, upon the completion of said building, undertook and promised to pay plaintiff $45,293; a copy of which contract is hereto annexed, marked exhibit A, and made a part of this petition.

"3. The plaintiff proceeded diligently with the construction of said building when not obstructed and delayed by defendant's architect, and on the 13th day of September, 1889, he had fully erected and completed said building in accordance with his contract and to the satisfaction of said city and its architect, and then and there delivered the same to said city, who then and there accepted the same, and on October 2, 1889, the architect of said city delivered to plaintiff his final certificate showing the completion of the entire work in accordance with said contract.

"4. Plaintiff further alleges, that in the course of the construction of said building under said contract various differences and disagreements occurred and transpired between the architect of the city of Galveston and plaintiff, as to the plans, details, and specifications, which finally resulted in the execution of a supplemental contract between the said building committee, acting for said city, and plaintiff, on the —— day of September, 1888, wherein it was provided and agreed be-

tween the said parties, that the construction of said building should be executed by plaintiff under the direction of the architect N. J. Clayton, in accordance with his (N. J. Clayton's) interpretation of the said plans and specifications; that in such portion of construction or materials required by the architect Clayton's interpretation of said plans and specifications, and by plaintiff not considered obligatory on him, as being in his opinion not called for by the contract, the same should be done under protest, the same to be left open, without impairment of the rights of any party in interest, until after the full completion of the contract; that the value of the work thus done be promptly estimated by plaintiff and architect, etc., the full terms and details of which supplemental contract are set forth in a copy of said contract hereto attached, marked exhibit B, and a part of this petition.

"5.   That after the execution of said supplemental contract, plaintiff proceeded with the construction of said building, strictly in accordance with the instruction of said architect Clayton, and in accordance with his interpretation, and in the course of said construction, continuing through the time dating from the —— day of September, 1888, to its completion and acceptance on the 13th day of September, 1889, furnished material and did and performed labor not called for by the contract, plans, and specifications, but directed to be done by the said architect, and at the time protested by plaintiff, in the sum of $2098.46, as will more fully appear from a detailed and itemized statement hereto annexed, marked exhibit C, and made a part of this petition; · that said labor and material set forth in said exhibit C was not called for by the contract, plans, and specifications; and the amount thereof, which was the reasonable value thereof, became due and payable to plaintiff on the 13th day of September, 1889, and upon which, since said date, plaintiff is entitled to interest at 8 per cent per annum.

"That defendant has hitherto failed and refused to pay plaintiff his said debt, or any part thereof, though long since due and often requested by plaintiff, to his damage in the sum of $3000."

We consider it unnecessary to state in extenso the contents of the several exhibits referred to.   Their substance is, we think, sufficiently indicated by the averments already recited.

Appellant insists that the petition is defective, because it "fails to allege or show any promise on the part of the defendant to the plaintiff in respect of the debt or the claim for work or labor and material sued for, and therefore not any liability in law for the same."

We are of opinion that the demurrer was properly overruled.   The facts alleged disclose an express contract, in September, 1888, on the part of the defendant to pay plaintiff for the labor and material applied by him to the building, which were not included in the original contract of May, 1888.   A contract includes a promise, and the allegation of the one is the averment of the other.   The petition alleges "the exe-

cution of a contract, the performance of labor thereunder by the plaintiff, the acceptance of the work by the defendant, and the amount due thereon, together with the usual prayer for judgment." This, we think, was sufficient. Davenport v. Jennings, 40 N. W. Rep., 952.

Among the defenses urged by the defendant was "a sworn plea, alleging the donation by the executors of the will of John Sealy, deceased, under the powers vested in them under said will, and in pursuance of the wishes of their testator as therein expressed, to the defendant of $50,000 in trust, to be expended in the erection of a hospital within the corporate limits of the city of Galveston for the care of its indigent sick, maimed, and wounded; alleging, that the defendant having accepted the trust, in order to carry out its purposes, on September 6, 1887, enacted an ordinance creating the committee by which the said contract of May 8, 1888, was executed on the part of the defendant, and by which the alleged supplemental contract of September —, 1888, also was executed, clothing the said committee with power to carry out the object of the gift of the said executors, and to receive and disburse the said fund, and dedicating the ground upon which to erect said building; alleging, that the sole purpose of the creation and appointment of said committee and the utmost scope of its powers were the investment and disbursement of said gift or bequest in accordance with the wishes and object of the deceased, and not the creation of any debt or obligation on the part of the defendant apart from said fund of $50,000; that the said committee, in pursuance of the powers vested in it by the said ordinance, entered into the said contract of May 8, 1888, with the plaintiff, and also into other contracts with other persons, for the erection, completion, and necessary equipment of said hospital, and had paid out and disbursed therefor under said contracts, including the amount paid to plaintiff under said contract of May 8, 1888, the entire amount of said gift or bequest, and said committee was without power or authority to incur indebtedness on the part of said defendant, or to bind it further than said trust fund."

Upon this plea the following requested instructions were predicated, and the appellant complains that the court erred in refusing them:

Special instruction number 3: "The power of the building committee of the John Sealy Hospital to contract an indebtedness on the part of the defendant was limited to the sum of $50,000, the amount named in the ordinance of the city of Galveston, of September 6, 1887, creating that committee, and all persons dealing with that committee were bound to know the extent of its authority. If the jury believe from the evidence that the said sum of $50,000 had been fully expended, or that binding contracts to that amount had been entered into by the said committee for the erection and completion of the medical hospital contemplated by said ordinance, before the work and material sued for

had been performed and furnished, then there is no liability on the part of the defendant for such work and material, or such portions thereof, as had not been performed and furnished, and the jury will so find, unless they further believe from the evidence that the city council of the city of Galveston subsequently ratified the acts of the said committee in building a more expensive hospital than one costing $50,000."

Special instruction number 4: "The mere receiving and occupancy by the defendant of the hospital building would not be sufficient to constitute a ratification of the acts of the committee in building a more expensive hospital than one costing $50,000."

Unless there was error in refusing special instruction number 3, special instruction number 4 was properly rejected, as the latter depends upon the former.   Plaintiff sought to recover by virtue of the supplemental contract of date September, 1888.   At that time, the evidence undisputed shows that the committee intrusted with the application of the Sealy fund had expended $46,093.   The original donation was $50,000, and hence there was a balance unexpended at the date of the supplemental contract of $3907.   If, therefore, under the theory insisted on in special instruction number 3, the committee was limited to the expenditure of $50,000, the contracts made with appellee were yet within the scope of their delegated powers.   The evidence did not justify the charge asked, and it was properly refused.

Appellant's sixth assignment of error is as follows:   "The verdict of the jury as to all the items of labor and material set forth in exhibit C to plaintiff's petition and sued for as extras, except that of $300 for increase in height of tower, and that of $75 for change in main stairway, is contrary to the law and is not supported by the evidence, in this: that the evidence shows that the said labor and material, except the two items relating to the tower and the stairway, were necessary to the construction and completion of the said building, under the contract of May 8, 1888, read in evidence, and in accordance with the plans and specifications prepared therefor by the architect N. J. Clayton, and as construed and interpreted by said architect; that by the terms and conditions of said contract, should any dispute arise respecting the true construction or meaning of the said plans or specifications, or as to what was extra work outside the contract, the same should be decided by the said architect, and his decision should control and be final; that a dispute did arise pending the construction of said building respecting the true construction of said plans and specifications, and as to whether or not the items of labor and material sued for were extra work and material outside the contract, and the said architect decided that they were called for according to the true construction and meaning of said plans and specifications, and were not extra work and material outside the said contract, and the said labor and material

were performed and furnished by the plaintiff in pursuance of such, the architect's decision; that there is no evidence tending to show that the said architect's decision as to the true meaning of said plans and specifications, and as to whether or not the said items of labor and material were extra work and material outside the said contract, was arbitrary or incorrect; or to show that said labor and material, or any part thereof, except the two items relating to the tower and the main stairway, were extras, not called for within the true intent and meaning of said contract, and not the reasonable and proper construction or interpretation of said plans and specifications."

It will be seen that the foregoing assignment ignores the supplemental contract of September, 1888, on which plaintiff mainly relied for recovery. It is true, that under the contract of May 8, 1888, the architect Clayton was made the final interpreter of the plans and specifications under which the building was to be constructed. The city of Galveston, however, saw fit, as it seems to us, in the contract of September, to waive the terms of the contract of May, and to provide, in effect, that in the event of a difference of construction between the architect Clayton and the contractor Devlin, the latter should, *under protest*, complete the work under the interpretation of the architect. Meanwhile adjudication of the contractor's rights involved in such work done under protest was left open, without impairment, until after the full completion of the contract. After this contract of September the architect no longer remained the final interpreter of the plans and specifications, and any difference as to their meaning between himself and the contractor was subject to determination elsewhere. Such a difference did arise; and we dissent from the statement contained in the foregoing assignment, that "there is no evidence tending to show that the architect's decision as to the true meaning of the plans and specifications" was incorrect.

The statement of facts consists of several hundred pages. We shall not, therefore, attempt to detail the testimony. Suffice it to say, that there was a conflict in the evidence as to what constituted the plans on which the estimate for the construction of the building was made by the contractor. The plaintiff contended, that the plans furnished him by the architect for the construction of the "central" or "administrative" building called for a measurement of 13 feet 5 or 6 inches in the clear for the first story of the wards, and for walls 12 inches thick for this story; whereas the defendant claimed, that the plans furnished called for a measurement 14 feet in the clear, and for walls 16 inches thick. Out of this difference, principally, grew the items for labor and material set forth in plaintiff's account. With reference to this contention, the testimony presents a well defined conflict. On the issue the jury found for the plaintiff to the extent of the greater part of

his demand, and, under the rule of decision so often laid down by this court, we do not feel authorized to disturb their verdict. Chase v. Veal, 83 Texas, 333.

The last error assigned is, that "the verdict of the jury, under the law and the facts in the case, is grossly excessive."

This assignment is too general to require notice from us. It does not inform us in what respect, under the facts, the verdict is grossly excessive; and, without aid from the assignment, we would be required to engage in an exhaustive inspection of all the testimony in a very voluminous record to determine what, if any, facts sustain it. Cannon v. Cannon, 66 Texas, 685; Railway v. Hinzie, 82 Texas, 623.

The judgment should be affirmed.

.          *Affirmed.*

Adopted April 12, 1892.